# United States Court of Appeals
# for the Fifth Circuit

FABRICLEAN SUPPLY, ET AL.,

    *Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

    *Respondents*.

No. 25-60006

## OPPOSITION OF FABRICLEAN SUPPLY, TECHNICAL CHEMICAL CO., AND OLIN CORP. TO EXTENDING THE ABEYANCE

Petitioners Fabriclean Supply and Technical Chemical Company, as well as Olin Corp. ("Petitioners"), had consented to the temporary abeyance that respondents ("EPA") requested several months ago. But now EPA asks the Court for an indefinite abeyance while EPA reconsiders the rule that Petitioners have challenged. Doc. 56-1 ("EPA Mot."), p.5. This indefinite pause will leave Petitioners forced to make substantial changes to their businesses, with no promise of timely resolution of their claims that the rule at issue is unlawful. In more detail:

1. The rule at issue (the "PCE Rule") prohibits a range of uses of perchloroethylene, starting on June 11, 2026, with additional prohibitions coming into force in a staggered fashion over the succeeding months. 89 Fed. Reg. 103,560, 103,607–08 (Dec. 18, 2024) (codified as 40 C.F.R. § 751.605). For uses that remain permitted, an employer must "ensure that no person is exposed to an airborne concentration" of the chemical that is above the "ECEL" of 0.14 parts per million. *Id.* at 103,608-09 (codified as 40 C.F.R. § 751.607). This restriction comes into force on March 13, 2026, for non-federal employers. *Id.* at 103,608 (codified as 40 C.F.R. § 751.607(b)(2)).

2. EPA published the PCE Rule in December 2024. Petitioners promptly filed their challenges to the Rule, under section 19 of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2618(a). Other petitioners filed in various circuits, and the cases were eventually transferred here pursuant to 28 U.S.C. § 2112.

3. On February 12, 2025, before EPA had even filed the administrative record, EPA moved the Court for a 60-day abeyance. Doc. 41. EPA requested that abeyance "to accommodate [the] new administration's

need to be briefed on the issues presented." *Id.* ¶ 8. Petitioners did not oppose that abeyance. The Court granted that abeyance on March 12, 2025. Doc. 54.

4. On May 11, 2025, the abeyance ended. On May 12, EPA moved the Court for a further abeyance. EPA states that it "intends to reconsider the PCE Rule through notice-and-comment rulemaking." EPA Mot. ¶ 5. A declaration from an EPA official, accompanying EPA's motion, explains that EPA intends to reconsider the ECEL of 0.14 ppm, and "[s]pecifically . . . whether, consistent with the best available science, it would be appropriate to use a different value to inform risk mitigation needs." Doc. 56-2, ¶ 8. EPA and its declarant say they expect this process to take 12-18 months. *Id.* ¶ 9; EPA Mot. ¶ 5.

5. EPA had asked petitioners whether they would consent to the extended abeyance. Petitioners inquired whether EPA would be willing to stay the PCE Rule, or have it stayed by the Court, during the abeyance and the agency's reconsideration of the Rule. The response was that EPA would consider compliance deadlines during the course of the planned rulemaking.

6. The extended abeyance would therefore place Petitioners in a significant dilemma. EPA's plan, as put to the Court in its Motion, is to

3

undertake a rulemaking that would be completed sometime between May 2026 and November 2026. That rulemaking might result in an ECEL higher than 0.14 ppm (and of course might not). Meanwhile, Petitioners are required to comply with the 0.14 ppm ECEL established by the PCE Rule, starting in March 2026—two months before the soonest that EPA contemplates it might finish its revisions. The rulemaking that EPA plans will not alleviate that obligation. Petitioners will be forced to undertake expensive investments to come into compliance with the Rule regardless of whether EPA ends up revising the ECEL.

7. Further, the Rule includes outright bans on various uses of PCE. Those bans come into force at various times, starting in June 2026. EPA's intended timeframe for the rulemaking—even assuming EPA completes the rulemaking on that timeframe—extends beyond that time, and beyond the point when the next successive ban comes into force. And EPA has not suggested that it contemplates relaxing or removing the prohibitions on various uses of perchloroethylene. Petitioners will be forced to alter their

4

businesses to come into compliance with the prohibitions, too, despite EPA's reconsideration rulemaking.

8. A stay of the PCE Rule pending judicial review would resolve these concerns. But EPA did not accept Petitioners' request for a stay. EPA said only that it would consider compliance timing during the course of its forthcoming rulemaking. That approach does not solve the problem created by the PCE Rule, because the rulemaking will not (according to EPA) be completed until 12 months at the earliest, and possibly 18 months, and quite likely even longer. Meanwhile compliance is due in 10 months.

9. The ordinary path to resolving Petitioners' concerns would be for them to show this Court that the Rule is defective and unlawful, and for the Court then to vacate it. But if the case is held in abeyance until EPA completes its rulemaking, that path would be closed to Petitioners as well.

10. EPA notes that courts have granted abeyances to give time for agencies to reconsider actions that are being challenged. EPA Mot. ¶¶ 7–8 & n.2. EPA also points out that "EPA's reassessment of the rule may obviate the need for judicial resolution of some or all the disputed issues." EPA Mot. ¶ 8.

These observations do not justify leaving Petitioners subject to actual, ongoing injuries that will be arriving soon. Indeed those injuries occur well before March 2026; Petitioners must reconfigure their businesses before the compliance date, to ensure they are in compliance upon that date.

11. At the same time, Petitioners recognize that as EPA develops a proposed revision to the PCE Rule, that proposed revision may indeed narrow the issues and may inform Petitioners and the Court about what steps would be prudent and efficient. Petitioners can also move this Court for a stay of the PCE Rule, if the compliance dates come closer without any relief from EPA itself. Accordingly, Petitioners would not oppose an abeyance of 90 days. Crucially though, if EPA wishes to continue the abeyance after those 90 days have elapsed, EPA should make that request to the Court with a justification based on a concrete proposal to alleviate the compliance burdens imposed by the Rule that Petitioners have asked this Court to vacate.

For these reasons, Petitioners oppose EPA's Motion for an indefinite abeyance. But they would not oppose an abeyance of 90 days.

May 20, 2025                                Respectfully submitted,

/s/ *Keith Bradley*
KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
keith.bradley@squirepb.com
kayla.mendez@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037
samuel.ballingrud@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
3135 O Street, NW
Washington, D.C. 20007
(202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for Fabriclean Supply, Technical Chemical Company, and Olin Corporation*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,061 words, as determined by the word-count function of Microsoft Office 365.

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Vollkorn font.

*/s/ Keith Bradley*
Keith Bradley